## Keiner v. Collins.

(Decided December 18, 1914.)

### Appeal from McCracken Circuit Court.

1.  New Trial—Malicious Prosecution—When Granting of Not Error. —Where it is complained, on appeal, that the Circuit Court twice granted the defendant, in an action for malicious prosecution, a new trial; that following the third trial of the case and the return of a verdict for the defendant, plaintiff was refused a new trial, and her motion to substitute the judgment entered on the verdict returned for her on the first or second trial for that rendered for defendant on the third trial, was overruled, the Court of Appeals will review the rulings and judgment of the Circuit Court on the first and second as the third trial. But where it is shown by the record, as in this case, that the granting of each of the new trials was authorized because of errors committed by the Circuit Court in instructing the jury, and that the rulings and instructions of the Circuit Court on the third and last trial, were free from substantial error, the judgment rendered on the last trial will be affirmed.

2.  Malicious Prosecution—Probable Cause—Instruction Defining— What it Should Contain.—The instruction as to probable cause, given both on the first and second trial, was improperly confined to a definition of the term in the abstract. In an action for malicious prosecution what facts constitute probable cause is a question of law for the court, but the court should tell the jury what facts constitute probable cause, and let them determine, in such case, whether these facts are proved. This was done on the third and last trial.

3.  Malicious Prosecution—Malice—How Defined.—The meaning of the word "malice" or "maliciously" depends largely upon the subject to which it is applied. In the law of malicious prosecution it requires the mental condition or purpose. It is not a mere fiction of law, but it must be malice in fact. Therefore, the malice in a malicious prosecution is not, while it may be, ill will to the individual; but it is any evil or unlawful purpose, as distinguished from that of promoting the justice of the law. The instruction

defining malice on each of the three trials did not correctly state the law, but being more favorable to the plaintiff than she was entitled to have it given, and prejudicial to the defendant alone, the error of the court in giving it on the last trial is not ground for a reversal.

OLIVER & OLIVER and SAMUEL H. CROSSLAND for appellant.

BERRY & GRASSHAM for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action for malicious prosecution was brought by appellant against appellee in the court below, the amount of damages claimed being $5,475.00. It was alleged in the petition that appellee, who is the chief of police of the city of Paducah, arrested appellant under a warrant issued at his instigation by the judge of the police court of the city of Henderson, charging her with the crime of grand larceny; that after appellant's arrest she was taken by appellee to the city of Henderson, where she was guarded at her own expense until indicted, through his procurement, by the grand jury of Henderson County, for the crime charged; and that upon the return of the indictment she was committed to jail, where she remained in confinement for a week and until able to give bond. It is further averred in the petition that at the succeeding term of the Henderson Circuit Court she was tried under the indictment for the crime therein charged, but that the case was not submitted to the jury on the evidence, because the Commonwealth's Attorney, before the conclusion of her evidence, announced to the court that the evidence relied on by the Commonwealth did not warrant her conviction, and upon his motion the court peremptorily instructed the jury to acquit her, which was done, and, by the judgment entered, appellant discharged from custody. That appellant was innocent of the crime charged against her and that her arrest, indictment and prosecution therefor were made, instigated and procured by appellee, maliciously and without probable cause.

The answer of appellee admitted the arrest of appellant by appellee and her delivery by him to the police judge of Henderson, but denied that her indictment or prosecution were instigated by him or that in effecting her arrest and delivering her to the police judge at Henderson he acted maliciously or without probable cause.

In the second paragraph of the answer the facts leading to the arrest, indictment and trial of appellant

were particularly set forth; and it was alleged that in effecting her arrest and delivering her to the police judge at Henderson appellee acted as a peace officer, upon probable cause, without malice and under a warrant, duly issued by the police judge of Henderson, charging her with the crime of grand larceny.

There were three trials of the case. On the first trial appellant recovered a verdict for $1,475.00 damages, on the second a verdict for $1,500.00 damages, but following the return of each of these verdicts the circuit court granted appellee a new trial. On the third trial the jury returned a verdict for appellee, upon which judgment was duly entered. Following the last verdict and judgment appellant entered motion to set them aside and substitute in lieu thereof, first, the verdict and judgment of $1,475.00, recovered by her on the first trial, and, second, the verdict and judgment of $1,500.00 recovered by her on the second trial, and at the same time filed motion and grounds to set aside the last verdict and judgment and for a new trial, all of which motions were overruled by the court. From these several rulings and the judgment entered upon the last verdict, she prosecutes this appeal, which brings to us for review the following questions: (1) Did the court err in granting appellee a new trial following appellant's recovery of the first verdict and judgment. (2) Did the court err in granting appellee a new trial following appellant's recovery of the second verdict and judgment. (3) If there was no error in either of the above particulars, did the court err in refusing to grant appellant a new trial following the return of the verdict in behalf of appellee on the third and last trial?

In passing upon these questions a brief consideration of the facts appearing from the bill of evidence will prove helpful. In October, 1909, appellant, who then resided in Paducah, was practicing "palmistry," under a license from that city, and was known as Madam B. Castellano. A palmist is one who professes to be able to delineate the character and disposition of the individual, relate events of his past life and foretell what his future life will be by examination of the marks or lines in the palm of the hand. Appellee was at that time chief of police of the city of Paducah. On the 9th day of October, 1909, a gold watch was stolen in the city of Henderson from a colored woman named Daisy Moss, and by a woman professing to be a "fortune teller." Imme-

diately thereafter circular letters were sent out by the marshal of the city of Henderson to peace officers in other towns in Western Kentucky, giving an account of the theft and stating that it was committed by a woman claiming to be a fortune teller. The circulars also gave a description of the person of the supposed thief and of the hat and clothes she was wearing when the theft was committed. One of these circular letters was received by the appellee, who, upon reading it, sent a postal card to the marshal of Henderson containing the following words:

"Satisfied that your party is here. Has license until January 1st in the name of Madam Castellano. Send warrant. James Collins, Chief Police."

On October 14, 1909, after receiving from appellee the postal card referred to, the marshal of Henderson procured from the judge of the Henderson police court a warrant for the arrest of appellant charging her with the crime of grand larceny, namely, the theft of the watch from Daisy Moss. On October 15th, S. H. Heildbroner, a peace officer of Henderson, went to Paducah, having in his possession the warrant which had been issued for the arrest of appellant, and on the night of that day Heildbroner, with appellee's assistance, arrested appellant and took her to the Paducah police station, where she was released for the remainder of the night and until October 18th or 19th, when appellee went with the warrant to her home in Paducah and arrested her, advising her that he was going to take her to Henderson for an examining trial. She was then taken to Henderson by appellee and surrendered into the custody of the peace officer, Heildbroner. On October 20th, and before appellee left Henderson, the grand jury of Henderson County returned an indictment against appellant, as Madam B. Castellano, charging her with the crime of grand larceny. She was guarded by Heildbroner until indicted by the grand jury, when she was placed in custody of the jailer of Henderson County. Appellant was held in jail for a week until bail was deposited for her. At the January term, 1910, of the Henderson Circuit Court, she was tried under the indictment, and before concluding her evidence the Commonwealth's Attorney admitted his inability to make out a case, and on his motion the court gave a peremptory instruction directing them to find for the defendant. The verdict

was accordingly returned and judgment entered thereon, which resulted in appellant's discharge.

We think it manifest from the evidence introduced in appellant's behalf on the trial of this action that she was innocent of the crime for which she was arrested and indicted, and, in fact, that she was in the city of Paducah during the whole of the day upon which the watch was said to have been stolen. Much of the evidence introduced in her behalf conduced to prove that appellee, with even slight investigation, ought to have learned before arresting her that she was innocent of the crime in question, and that in effecting her arrest appellee acted hastily and without probable cause, if not with actual malice. On the other hand, the evidence introduced in behalf of appellee conduced to prove that he was not hasty in arriving at the conclusion that she was guilty of the crime, and that, in order to satisfy himself of her guilt, he postponed her arrest from about the 10th until the 15th of October, and during this interval made such investigation as seemed practicable in endeavoring to ascertain whether she committed the crime. His evidence also tended to prove that the description of the fortune teller, and supposed thief, given in the circular letter sent out from Henderson, fairly fitted the appellant. In other words, the evidence introduced in appellee's behalf as a whole strongly conduced to prove that in arresting appellant and delivering her to the police judge of the city of Henderson, he acted from probable cause and without malice. Without further discussing the evidence we may say that the circuit court would not have been authorized to set aside a verdict for either of the parties upon the ground that it was not supported by evidence or was flagrantly against the evidence.

We have not been favored with a brief by appellee's counsel, but that filed by counsel for appellant fails to indicate the ground or grounds upon which the circuit court acted in granting appellee a new trial following the return of the first and second verdicts in behalf of appellant. We are certain, however, that in neither instance could it have properly been granted because of an absence of evidence to support the verdict. Without discussing the several grounds filed in support of appellee's motion for a new trial following the return of the first verdict, we find that one of them presented the complaint that that court had erred in instructing the jury, and our examination of the instructions given on the

first trial convinces us that instructions Nos. 3 and 4 did not properly state the law.

Number 3, which was as to the measure of damages, improperly authorized the jury, in the event they found for appellant, to allow her, in addition to damages for mental suffering or humiliation, such damages as would compensate her for any physical suffering that she may have endured by reason of her arrest and prosecution. Damages for physical suffering were not recoverable, because the evidence failed to show any physical suffering on the part of appellant. We do not mean to say that in a case for malicious prosecution damages for physical suffering may not be recovered upon a proper state of facts, for we can imagine that an arrest and the duress resulting therefrom might be accompanied by such force or circumstances as to cause physical suffering, but no such force or circumstances were shown by the evidence in this case.

We also find that instruction No. 4 incorrectly stated the law of probable cause as applicable to the facts of this case. That instruction is as follows:

"Probable cause is such reasonable grounds as ordinarily prudent persons are accustomed to act upon when engaged in a like business or the doing of a like thing, under like or similar circumstances of this case."

The defect in this instruction is that it did not tell the jury what facts constituted probable cause in this case. In Ahrens & Ott Mfg. Co. v. Hoeher, 106 Ky., 692, a similar instruction was condemned. In the opinion it is said:

"The court properly defined probable cause, but he did not tell the jury what facts constituted probable cause in this case. What facts constitute probable cause is a question of law for the court. Langston v. Langston, 18 R., 299; Meyer v. L. St. L. & T. Ry. Co., 17 R., 945. The court should tell the jury what facts constitute probable cause, and let them determine, in a case like this, whether these facts are proved."

In the recent case of Schwarts v. Boswell, 156 Ky., 103, we again condemned an instruction which defined probable cause in the following terms:

"Reasonable and probable cause means such cause as would induce a reasonably cautious and prudent person to have another arrested under the same or similar circumstances as are shown by the evidence in this case,

with the expectation of causing a conviction of the party arrested on the charge preferred.''

In holding this instruction defective we expressly approved the statement of the law as found in the excerpt from the opinion in Ahrens & Ott Mfg. Co. v. Hoeher, *supra,* quoted above. In view of the incorrect statement made of the law in each of the two instructions referred to, we find sufficient cause for the circuit court's granting appellee a new trial following the return of the first verdict in favor of appellant.

The reason for the court's granting appellee a new trial following the return of the second verdict in behalf of appellant is also readily discoverable. The cause is found in an instruction marked ''Y'' asked by appellant. which erroneously defined the word ''maliciously'' as used in other instructions given in the case. The instruction is in the following language:

''The word 'maliciously' as used in these instructions, means intentionally doing a wrongful act towards another without legal excuse or justification.''

This instruction is even more defective than the one defining malice, condemned in Schwarts v. Boswell, *supra.* In that case the instruction was in the following language:

''Malice means the intentional doing of a wrongful act, without just cause or excuse.''

Of this instruction it is in the opinion said:

''An instruction in practically these identical words was held erroneous by this court in the case of Ahrens & Ott v. Hoeher, 106 Ky., 692, cited and approved in Metropolitan, Etc. v. Miller, 114 Ky., 754. In defining malice, the jury should be instructed that it is the intentional doing of a wrongful act to the injury of another, with an evil, or unlawful motive, or purpose. The instructions given authorized the jury to find for plaintiff if they believed: (1) That the suing out of the warrant was *intentional;* (2) That it was *wrongful,* and (3) That it was done *without just cause or excuse.* If the party arrested is innocent, the prosecution is always *wrongful,* and *without just cause or excuse,* and the procuring of the warrant *intentional.* Therefore, under the instructions given, all that would be necessary to authorize a recovery would be for plaintiff to establish his innocence of the charge. It precludes the consideration of purpose, or motive, on the part of the prosecutor; and

there *must* be an evil or unlawful purpose before a re-covery is authorized."

The instruction defining malice, in Ahrens & Ott Mfg. Co. v. Hoeher, *supra,* referred to above, was in the following language:

"The court instructs the jury that by the terms 'maliciously' and 'malice,' as used in these instructions, is meant the intentional doing of a wrongful act to the injury of another, without justification or legal excuse therefor. In Bishop on Non-contract Law, Sec. 231, the learned author says that the meaning of the word 'malice' depends largely upon the subject to which it is applied, and that in a general way its meaning is as above defined. He then adds: 'In the law of malicious prosecution it requires the mental condition or purpose, which judicial decision has made an indispensable element in the wrong.'

"It is not a mere fiction of law, but it must be malice in fact Taking these views for our guide, the malice in malicious prosecutions is not necessarily, while it may be, ill will to the individual; but it is any evil or unlawful purpose, as distinguished from that of promoting the justice of the law."

It follows from what we have said as to the error in the instruction defining malice, given by the circuit court on the second trial of this case and its prejudicial effect, that the granting to appellee of the new trial following the return of the second verdict in favor of appellant, was not error.

The only question remaining for decision is as to the propriety of the action of the circuit court in overruling appellant's motion for a new trial following the return, on the third and last trial, of the verdict in behalf of appellee. While numerous grounds were filed by appellant in support of her motion for a new trial, it is strongly insisted that it should have been granted because of error in the instructions given by the court. A careful reading of the instructions convinces us that with only one exception they admirably state the law, and the whole law, applicable to the case. The most of them are in the language contained in the instructions given on the previous trials, at appellant's instance. Instructions 4 and 5, were not given on the first trial, but are free of error. Instruction No. 4 is as follows:

"The court further instructs you that plaintiff does not sue in this case for false imprisonment or for an un-

lawful arrest, but for maliciously and without probable cause causing said warrant to be issued and said indictment to be returned against her, and the court now instructs you that although you may believe from the evidence in this case that defendant, Collins, did arrest the plaintiff and carry her to Henderson, Ky., or, that she was arrested at his instance, and turned loose, yet you cannot find damages for her against defendant on account of said arrest or on account of said imprisonment, or for any expense incurred by her in going to Henderson or in defending herself against said prosecution, unless you shall further believe from the evidence that said defendant, Collins, maliciously and without probable cause, procured or aided or assisted in procruing the issual of said warrant or the return of said indictment against plaintiff as defined to you in instruction No. 1, herein.''

Appellant's objection to this instruction is that it was improper for the court as therein stated to advise the jury that plaintiff could not recover for false imprisonment or for an unlawful arrest. This statement in the instruction was proper, because in point of fact appellant did not sue for false imprisonment or for unlawful arrest, but for the appellee's maliciously and without probable cause procuring the warrant to be issued and the indictment to be returned against her. In other words, the action is not for a false arrest, but for a malicious prosecution, and this being true, it was proper for the instruction to confine the recovery to the cause of action set out in the petition.

Instruction No. 5, to which appellant also objects, is as follows:

''The court further instructs you that if you shall believe from the evidence in this case that defendant, Collins, at the time complained of by plaintiff had received information to the effect that a person of plaintiff's description had stolen a watch in the city of Henderson and that said information was such as a reasonably prudent person would act upon, and that defendant from such information had reasonable grounds to believe and in good faith did believe that she was the person wanted in Henderson upon said charge, then defendant had probable cause for procuring the issual of said warrant or the procuring of the return of said indictment or in aiding or assisting in so doing, if you believe from the evidence that he did so, or did aid or assist in

doing either of these things, and the law in this case is for the defendant and you will so find."

By this instruction the court for the first time in this case properly defined probable cause, by calling to the attention of the jury a state of facts which, if proven by the evidence, would show probable cause for the arrest and prosecution of appellant. The instruction seems to conform to the method of defining probable cause approved in the cases of Ahrens & Ott v. Hoeher, and Schwarts v. Boswell, *supra.*

The instruction on the measure of damages also properly excluded from the recovery compensation for physical suffering, which had been improperly allowed by the instruction on the measure of damages given on the first trial. The only erroneous instruction we find among those last given is No. 7, which attempts to define the word "maliciously" as used elsewhere in the instructions, but this instruction, while prejudicial to appellee, was more favorable to appellant than the law allowed.

It is further insisted for appellant that the court erred in the matter of admitting incompetent evidence in behalf of appellee and excluding competent evidence offered in her behalf. Our examination of the evidence convinces us that the court committed no prejudicial error, either in admitting or excluding evidence. We think it would have been proper to have admitted the evidence of Mrs. Mary Knowles, appellant's witness, who would, if permitted, have testified as to certain facts that enabled her to know that appellant was at her home in Paducah on the day of the stealing of the watch in Henderson, but as appellant's presence at her home and in Paducah during that day was abundantly established by other evidence found in the record, the exclusion of Mrs. Knowles' testimony could not have been prejudicial. We do not regard incompetent the testimony of certain witnesses to the effect that the description contained in the circular letter sent out from Henderson fitted appellant. Such evidence was admissible as the letter furnished, in part, the information upon which appellee acted in arresting appellant, and conduced to establish his defense of probable cause.

As stated in a previous part of the opinion, there was sufficient evidence to support the verdict, and the case having been submitted to the jury under substantially correct instructions, no reason is apparent for disturbing the verdict; wherefore the judgment is affirmed.

Whole court sitting.